In the matter of the petition of LUKE MOWRY for a writ of
*Habeas Corpus.*

Upon a judgment for damages for the wrongful and fraudulent misapplication and conversion of school land certificates, deposited as security for a loan, an

execution against the person may be issued, after the return of an execution against property, unsatisfied in whole or in part.

The defendant in such a case is not entitled to exemption from imprisonment under section 16 of Article I of the constitution of this state, which provides that "no person shall be imprisoned for debt arising out of or founded on a contract, expressed or implied."

Where a sheriff is of opinion that the property of an execution defendant will not sell for enough to pay the expenses of the sale, he may, at his peril, refuse to levy upon it, and stating the facts, return the execution unsatisfied; and such return is *prima facie* sufficient to authorize the issuing of an execution against the person.

Where a petition for a *habeas corpus* alleges that the petitioner is confined in jail on an execution against his person, which was issued irregularly, or in an action in which the petitioner was not liable to arrest, the return of the jailer is sufficient, if it shows that the petitioner is held by virtue of an execution against his person, which is valid upon its face, and which is produced and a copy of it annexed to the return; and the petitioner should allege by way of answer or avoidance, any facts which would show that the imprisonment, though apparently lawful, is really not so.

*Nat. Rollins,* for petitioner.

*Smith, Keyes & Gay,* and *Wakeley & Tenney, contra.*

*By the Court,* DIXON, C. J.   *Certiorari* to the Judge of the Ninth Circuit, to bring up proceedings had before him on an application for a writ of *habeas corpus,* and for the discharge of a petitioner from imprisonment. The return of the judge, so far as it is necessary to state it, shows the following facts :

The petitioner, *Luke Mowry,* was brought before him on a *habeas corpus,* allowed on petition, setting forth that the petitioner was confined in the common jail of the county of Dane, upon an execution issued on a judgment rendered in the circuit court for that county, in favor of one *Algernon S. Wood,* and against the petitioner, *for a debt arising out of an express contract ;* that an execution against the property of the petitioner had previously been issued upon the same judgment to the sheriff of Dane county, to whom the petitioner had offered unincumbered real estate belonging to himself in that county, sufficient in value to satisfy the whole or a part of the judgment, and requested that it be seized and sold, and whom he had likewise informed that he owned other unincumbered real estate in the county, which he would turn out in case that offered should prove insufficient ; and that the

sheriff, without the knowledge of the petitioner, and before the expiration of sixty days from the time it was issued, returned the execution unsatisfied, and admitted in his return that the petitioner had offered real estate, upon which he had refused to levy. A copy of the return was annexed to the petition, in which the sheriff certified that he had made diligent search for personal property belonging to the petitioner, with which to satisfy the execution, and that he could find none; and that he had demanded real estate, upon which the petitioner had turned out lot 7, in block 80, in the village of Howard, Dane county, which was worthless, and would not, if sold, pay the expenses of sale; and therefore he returned the execution unsatisfied. The execution against the person was thereupon issued. A copy of each execution was annexed to the petition, and no exception was taken to the form or substance of either, save that the one against the person was not signed by all the attorneys who acted for *Wood* in this suit. It appears that two firms of attorneys appeared for him, and it was subscribed by only one of them. This objection was considered so groundless that it was abandoned in this court.

The keeper of the jail returned that he detained the petitioner by virtue of the execution against his person, which he produced. To this return the petitioner demurred, on the ground that it did not deny that the action was one in which he could not be arrested, and that he had turned out unincumbered real estate upon the execution against his property, on which the sheriff had refused to levy. If the petitioner desired an inquiry into the nature of the action between himself and *Wood*, and the facts touching the service and return of the first execution, as he evidently did, this was an entire mistake of practice. The jailer was only required to return the authority and true cause of imprisonment, as they had come to his knowledge, and it being an execution, he was to annex a copy to his return and produce the original. R. S., chap. 158, sec. 18. This he did, and the execution being valid on its face, constituted, as to him, a good cause for the detention, which the demurrer admitted. Appendix, 3 Hill R., 658, note, 28. The causes assigned for

the demurrer were not matters of fact which the officer, in
his return, was bound to admit or deny. They were strictly
matters in avoidance of the return, which the petitioner should
have alleged and proved, by way of answer, to show that
the imprisonment, apparently lawful, was nevertheless not so,
and that he was entitled to his discharge. This is the prac-
tice clearly indicated by the statute. Sec. 26, chap. 158, R. S.

The circuit judge, however, overlooked the mistake of the
counsel for the petitioner, and proceeded to investigate the
merits of his imprisonment, so far as they were made to ap-
pear; and we will do the same thing. The record in the case
of *Wood vs. Mowry* was produced, but no other proof was
offered. A copy of the record is returned by the judge, from
which it appears that the action was for *damages alleged to
have been sustained by Wood on account of the wrongful and
fraudulent misapplication and conversion, by the petitioner, of
certain school land certificates*, the property of *Wood.* The
complaint alleged that *Wood* had borrowed from the peti-
tioner a sum of money, and, to secure the payment of the
note, deposited with him the certificates, a description of
which was given; that the petitioner had transferred the
note to third parties, who had obtained a judgment thereon;
that the plaintiff was ready and willing and had offered to
pay the judgment to the owners or to the petitioner, provided
the certificates were delivered up to him; but that the own-
ers of the judgment could not do so, as they had never had
them in their possession, and the petitioner refused, falsely
and fraudulently pretending he had sold them as a pledge,
when, in truth and in fact, he had wrongfully and fraudu-
lently misapplied and converted them to his own use. The
value of the certificates was alleged to have largely exceeded
the amount of the note. The petitioner, by his answer, de-
nied the wrongful and fraudulent misapplication and conver-
sion of the certificates, and insisted that he had made sale of
them whilst the note was still in his possession, and applied
the proceeds in part payment, as it was lawful for him to do.
The jury, under the instructions of the court, found him
"guilty as charged in the complaint," and assessed the plain-
tiff's damages, for which the judgment was entered.

Jan. Term,   Two questions were considered by the judge :   1. Wheth-
  1860.    er the judgment was for a debt arising out of a contract; and
In re Mowry.  2. Whether the return of the sheriff to the execution against
the property of the petitioner, was sufficient to authorize the
issuing of an execution against his person.   He decided both
against the petitioner; and we think he was unquestionably
right.

Section 2 of chapter 127 of the Revised Statutes, provides,
among other things, that the defendant may be arrested and
held to bail in an action for the recovery of damages, on a
cause of action not arising out of contract, where he is not a
resident of the state, or is about to remove therefrom, or where
the action is for an injury to person or character, or for injur-
ing, or for wrongfully taking, detaining or converting property.
Section 7 of chapter 134 provides, that if the action be one
in which the defendant might have been arrested under sec-
tions 2 and 4 of chapter 127, an execution against the person
of the judgment debtor may be issued to any county within
the jurisdiction of the court, after the return of an execution
against his property unsatisfied in whole or in part.

The constitution, section 16, Article I, provides, that "no
person shall be imprisoned for debt arising out of or founded
on a contract, expressed or implied."

For the petitioner it is insisted, that as there was a con-
tract between the parties in reference to the certificates, upon
which an action might have been maintained, that which
was instituted, must be considered as of the same nature,
and treated as if brought upon the contract itself.   In sup-
port of this view, we are referred to the case of *Brown vs.
Treat*, 1 Hill, 255, in which it was said, that the act to abol-
ish imprisonment for debt in the state of New York, was in-
tended to reach all cases wherein the plaintiff might, in fact,
have given credit to the defendant, and that he could not,
by electing to sue in case or trover, change the truth, and
deprive the defendant of his privilege.   The case did not
call for a decision of that question, and the doctrine thus in-
timated was afterwards directly repudiated, both by the su-
preme court and by the court for the correction of errors.
*Suydam vs. Smith*, 7 Hill, 182 ; *McDuffie vs. Beddoe*, id., 578.

Admitting the analogy between our constitution and their statute, the authority of that state is clearly against the petitioner. But the statute would seem to be susceptible of the more extended application. The language of the constitution, taken in its broad and popular sense, indicates a right accruing—a sum of money or other thing due or deliverable, by virtue of a contract, expressed between the parties, or implied from their acts and circumstances, or on account of a breach of it in respect to some matter provided for or contemplated by them when it was made—something springing out of the contract, and for the enforcement of which resort must be had to it—and seems not to include damages for those *wrongful* acts which either party may possibly do, and which, when done, are remotely connected with it, but were not anticipated by them at the time of making of it. The act in question was precisely of this character. The complaint charged the petitioner with the fraudulent and wrongful conversion of securities placed in his hands for a specific purpose, and the jury found him guilty. This was an act not within the scope of the contract, and not contemplated or provided for by either party, or at least by *Wood*, at the time the securities were given, and constituted, in the eye of the law, a tort or wrong, which was heretofore redressed by an action on the case. The fact that it was coincident with an implied undertaking on the part of the petitioner not to convert the securities, did not relieve, but aggravated its character as a wrong. There are a great variety of torts connected with contracts, which, when they involve a violation of confidence, increase the moral guilt of the perpetrator. As was observed by the court in *Suydam vs. Smith*, "The man who wrongfully converts to his own use, the property which another has intrusted to his care, is chargeable with a deeper shade of moral guilt, than the one who converts property which he has either found or tortiously taken ; for in addition to the wrongful appropriation of another man's goods, which is common to all the cases, the bailee is guilty of a breach of trust." The conversion was an unauthorized act, and *Wood's* claim for damages, will, when analyzed, be found not to have rested upon the contract at all. It was

June Term, 1860.

founded upon his prior right of property, and the interference of the petitioner in a particular over which the contract gave him no control. It existed, therefore, independently of the contract, and although the contract was set forth in the complaint, it was as inducement merely to the subsequent allegations of the wrong, which constituted the *gravamen* of the action.

As to the return of the execution against property, we think it was sufficient to authorize the issuing of one against the person. The sheriff may not have a very wide discretion in determining the value of property upon which he is to levy, but when he honestly thinks it will not pay the expense of sale, and will, therefore, increase instead of diminishing the amount of the judgment, we think it clear that he may, at his peril, refuse to levy, and stating the facts, return the execution unsatisfied. If it should turn out that he is mistaken, or if he acts in bad faith, he undoubtedly becomes liable to the injured party. Such a case would present a very different question from that now before us. No attempt was made to impeach the return, by showing that the sheriff was mistaken, nor that he acted unfairly, and until that is done, the presumption is in favor of its correctness.

For these reasons, the order of the circuit judge, remanding the petitioner, is affirmed with costs.