June Term,
1861.

COTTON
v.
SHARPSTEIN.

14  226
74  345

COTTON vs. SHARPSTEIN.

Where an attorney at law recovered a judgment for his client, and bid off the land of the judgment debtor at a sale upon execution, in satisfaction of the judgment, and took the certificate of sale in his own name, and afterwards sold it and converted the proceeds to his own use, it was *held*, that this was a *conversion* of the certificate, and the attorney was liable to *arrest* in an action against him for such conversion.

An attorney is not entitled in such a case to exemption from arrest under that clause in the constitution of this state which provides "that no person shall be imprisoned for debt arising out of or founded on a contract express or implied."

The question of liability to arrest seems to depend entirely in such cases upon the question whether the party is liable to an action of *tort*. Per PAINE, J.

It is the duty of an agent to keep money collected by him, for the principal to whom it belongs, and if, in the absence of any authority, express or implied, to treat it as his own, and himself as a mere debtor, he wrongfully converts it to his own use, he is liable to an action of trover, and to all the legal consequences of such an action, among which is (in this state) an execution against the body.

Whether a count alleging merely that the defendant had collected certain money for the plaintiff, as his attorney at law, and had not, though often requested, accounted for or paid it to the plaintiff, contains a sufficient allegation of a *conversion*, *quære*.

APPEAL from the County Court of *Milwaukee* County.

The first count in the complaint in this case alleged that the plaintiff employed the defendant, who was an attorney at law, to collect certain money due to the plaintiff from the United States, and gave him a power of attorney for that purpose; that the defendant, as such attorney, collected of said money the sum of $1,708 53, and paid to the plaintiff $708 53, but though often requested, had not accounted for or paid to the plaintiff the residue of said sum, which, with interest, was still due and owing from the defendant to the plaintiff. The second count alleged that the plaintiff retained the defendant as an attorney at law to prosecute a certain action for him; that judgment was rendered in said action in favor of the plaintiff; that the defendant (*Sharpstein*) caused an execution to be issued on said judgment, and at the execution sale bid off certain real estate of the judgment debtor for the sum of $604 04, whereby the judgment was satisfied; that said *Sharpstein* paid no money

June Term,
1861

COTTON
v.
SHARPSTEIN.

thereupon, but took the certificate of sale in his own name; that the certificate was a valid lien upon the premises sold, and entitled the holder to receive the sum of $604 04 with interest, from any person who might redeem the premises; that said *Sharpstein*, though often requested, had not accounted for or delivered said certificate to the plaintiff, but had sold and assigned it for $450, and converted the proceeds to his own use; and that said premises were afterwards duly redeemed by the payment to the holder of said certificate of the sum of $739 94, the amount then due thereon; wherefore the plaintiff demanded judgment for $1,739 94, with interest, &c.

Upon the affidavit of an agent of the plaintiff, stating his belief that the sale of the certificate by *Sharpstein* was without the consent of the plaintiff and in fraud of his rights, and upon sundry other affidavits tending to show the truth of the matters alleged in the complaint, an order was made by a court commissioner for the arrest of the defendant, and he was arrested. The judge of the county court made an order vacating the order of arrest, upon the ground that the defendant was entitled to exemption from arrest in the action, under the 16th section of Art. I of the constitution of this state. From this order the plaintiff appealed.

*J. E. Arnold*, for appellant, contended that the second cause of action set forth in the complaint was clearly for *damages* for the wrongful conversion of the plaintiff's property. The contract is properly set forth by way of *inducement*, and as a measure of damages; but the gist of the action is the wrongful conversion. *Ridder et al. vs. Whitlock*, 12 How. Pr. R., 208; 1 Chitty's Pl., 154.

*Butler, Buttrick & Cottrell*, for respondent, contended that an attorney is but an agent of his client, and that the action was for a breach of an implied contract growing out of the relation of the parties, citing Bacon's Abr., title "Attorney;" 1 Parsons on Con., 98; 2 Greenl. on Ev., §§ 142, 146; Chitty on Con., pp. 482, 484, 488; 2 Comyn on Con., 384; Story on Con., § 330; *Bredin vs. Kingland*, 4 Watts, 420; *Varnum vs. Martin*, 15 Pick., 440; 2 Chitty on Pl., 371 et

seq.; *Beardsley vs. Root*, 11 Johns., 464; *Hawley vs. Cramer*, 4 Cow., 717; *In re Gaylord Blair*, 4 Wis., 522.

*By the Court*, PAINE, J. This appeal presents the question whether an attorney who has been employed to collect a claim, and who, after collecting it, converts the proceeds to his own use, is liable to be arrested and held to bail in a civil action. For whether or not the first count in the complaint accurately alleges a conversion, the second count expressly does so, and the question was decided by the court below, not upon any insufficiency in pleading a conversion, but upon the broad ground that by reason of the relation between attorney and client, the claim sought to be recovered was one founded upon or growing out of a contract, and therefore, under our constitution, which prohibits imprisonment for debts of that character, the defendant was not liable to arrest. This question has already been passed upon by this court, and we have held that where a party has been guilty of a tortious conversion of property, he is liable to an action of tort, and to all the consequences of such an action, among which is an execution against the body, notwithstanding he may have had a contract with the owner of such property in relation thereto, which he also violated by such conversion. *In re Mowry*, 12 Wis., 52. It is perhaps unnecessary to add anything to what is there said upon this point. But I will say that the question of liability to arrest seems to me to depend entirely, in such cases, upon the one whether the party is liable to an action of trover or tort. If he is, then all the incidents to and results of such an action would seem necessarily to follow. For there can be no solid reason for saying, because the plaintiff might also have had a remedy in an action on the contract, that therefore his action of trover, to which he is also entitled, shall be shorn of a part of its ordinary incidents, and turned substantially into a remedy *ex contractu*. The only manner in which the existence of a contract in such cases can legitimately affect the right to an action of trover, would be by prohibiting it entirely. And such is its effect where the plaintiff can only sustain his action by a resort to the obligation imposed by the contract.

But nothing is more familiar than that a party having possession of property under a contract for a special purpose, may tortiously convert it to his own use, and render himself liable to an action of trover. The books are full of such cases. And they are based upon the plain proposition, that a party, by entering into a contract with the owner in respect to property, does not thereby incapacitate himself from wrongfully invading the rights of the owner which exist independent of the contract. And if he does so invade them, the owner's right of action is not founded upon the contract but upon the tort, and could be sustained whether the contract existed or not.

If I contract with another to keep and take care of my horse, and he neglects to do it, so that the horse is injured, my only remedy is an action on the contract. He was under no obligation to keep my horse, except that imposed on him by the contract. And to sustain my action I should have to rely on that obligation. But if he should kill or sell my horse, although that would also be a violation of the contract, it would be something more. It would be an invasion of my right of property, which I did not have by virtue of the contract, and which he was under obligations to respect without reference to the existence of the contract. Therefore it is a tort, and I may maintain trover simply because I do not have to rely upon the contract at all to sustain my right. Hence all that class of cases which sustain the right to an action of trover upon such facts, are authorities against the position that the claim sought to be recovered in such an action is a "debt arising out of or founded upon a contract." If it were such a debt, then the action of trover could not be sustained.

There is a class of cases very forcibly illustrating the position that in such instances the right of action does not depend at all on the contract, by holding that even though the contract be illegal and void as against public policy, still the owner may recover for a wrongful invasion of his right of property existing independent of the contract. A very well reasoned case of this description is that of *Woodman vs. Hubbard*, 5 Fost. (N. H.), 67. There a horse was hired to go to

a particular place, but was driven beyond that place and injured. The court held, as has been often held, that it was a conversion. The defense was set up that the contract of hiring was made on Sunday and was therefore illegal; but the court said that although illegal, that would not defeat the right of action, because this did not depend at all on the contract. This conclusion seems entirely in harmony with the result of the class of cases already referred to, which allow an action of trover upon such facts, where no question is made as to the legality of the contract. The contract being valid, trover is sustained, because the right of action is not founded on the contract but on the tort. It would therefore follow that even though the contract were illegal, that ought not to defeat the action of trover. I think the reasoning of that case much preferable to that of *Gregg vs. Wyman*, 4 Cush., 322, which is referred to in it, and which held an opposite doctrine.

The same conclusion also results from that class of cases which hold an infant liable for the conversion of property, though he may have had a contract in respect to such property, which he also violated. So far as the remedy on the contract was concerned, he could avoid it by his infancy. But for the tort he is held liable, as the right of action did not rest upon the contract. *Homer vs. Thwing*, 3 Pick., 492; *Vasse vs. Smith*, 6 Cranch, 231; *Campbell vs. Stakes*, 2 Wend., 143–4.

The doctrine, therefore, which was acted on in the case of *Mowry* before cited, and which is supported by the foregoing considerations, would seem to settle the question presented here in favor of the defendant's liability to arrest, unless the fact that he was an attorney creates an exception. We can see no reason why it should. On the contrary, we fully concur in the remark of the court in *Bredin vs. Kingland*, 4 Watts, 422, quoted by the respondent's counsel, that "there is no distinction in reason between an attorney at law and an attorney in fact." An attorney at law is an agent—nothing more. The title to property which he collects for his principal, is in the principal and not in him. And he should

be liable to an action for the conversion of that property in
the same manner that any other agent would be.

The relation of attorney and client is undoubtedly found-
ed upon a contract. The attorney would be liable to ac-
count, and to an action for negligence in performing his du-
ties. This is all the respondent's authorities go to show, and
this is readily conceded. But it by no means follows that
he would not be liable also in trover if he converted the
property of his principal, or that such an action would be
for a debt founded on the contract. That agents are so li-
able for a conversion, and the distinction between actions for
the tort and actions on the contract, are well established.
Paley on Agency, 78; Story on Bailments, § 191; *McMorris
vs. Simpson*, 21 Wend., 610. There would seem to be really
no room for questioning the liability of an attorney to an action
of trover for converting any other property besides money,
which he had collected for his employer. Suppose he should,
by direction of his principal, receive payment in horses or
cattle, and, without authority, should sell or convert them
to his own use. Could it be said that he would not be
liable in trover? Could it be said that an action for such
conversion was for a debt founded on contract? It seems
clearly not. And without relying necessarily upon the po-
sition that an attorney would be liable in trover for money
which he had collected and refused to pay over, we think
the second cause of action stated in the complaint is good,
for a conversion of the marshal's certificate. It shows that
the defendant, having recovered a judgment for the plain-
tiff, on which the judgment debtor's land was sold, bid off
the land for the judgment, and, instead of taking the cer-
tificate in the plaintiff's name, took it in his own name, and
afterwards sold it and appropriated the proceeds to his own
use. This would seem to be clearly a conversion of the cer-
tificate, which should have been taken in the plaintiff's
name, and which, having been taken in the defendant's name,
the plaintiff was entitled to have transferred to him. The
defendant had no authority, by virtue merely of his posi-
tion as attorney, to sell the certificate to any body else.
And an unauthorized sale is a conversion. *Etter vs. Bailey*,

8 Barr, 443; Story on Agency, § 437. The sale of the certificate seems entirely similar in its character to the act of the defendant in the case of *McNear vs. Atwood*, 5 Shep., 434, who was authorized to receive a note for his principal, and instead of taking it payable to his principal took it payable to himself, and negotiated it for his own use. He was held liable in trover for a conversion of the note. So in *Hogg vs. Snaith et al.*, 1 Taunt., 347, it was held that an attorney having power to collect and receive his principal's salary had no power to negotiate bills received in payment. See also *Wilson vs. Wadleigh*, 36 Me., 499; *Wilson et al. vs. Jennings et al.*, 3 Ohio St., 528. In relation to the cause of action first stated in the complaint, it may be doubtful whether it was intended to charge a conversion of the money, or to proceed on the contract for not accounting. It does not aver that the defendant had converted the money to his own use, but it does aver that he had refused to pay it over on demand. This, though perhaps not a sufficient allegation of conversion, would be sufficient evidence of one, provided an action of trover can be maintained against an agent for converting the money of his principal to his own use. Whether such an action can be sustained, is a question not without difficulty, or at least is one which may give rise to difficulty in its practical application, assuming that the action can be sustained. That it can be sustained under some circumstances, seems to us to result necessarily from well established principles. Thus there can be no doubt that the title to money which an agent has collected for his principal, at least so long as its identity can be established, is in the principal and not in the agent. Story on Agency, §229; Paley on Agency, p. 95. Suppose then an attorney, employed to collect a claim, should receive in payment a box of specie, or a package of bills, and while it was thus separate, the principal should demand its delivery, and the attorney should absolutely refuse to pay it over. Can there be any reason why he should not be liable in trover, any more than why any other agent should not, who refuses to deliver any other kind of property when bound to do so? We can see none. The case would be no stronger if we assumed

June Term,
1861.

COTTON
V.
SHARPSTEIN.

that the agent actually expended the money for his own use. The idea that he would not be liable in either case, can be justified only upon the theory that the title to the money is in him and not in his employer. But this, as we have already seen, is not so. The money, when collected, does not become his own, and he a mere debtor of his client for that amount, but the title to the money is in the client. This rule is necessary frequently both for the protection of the attorney and the client. If it were not so, if an attorney, having collected money, should die with it in his hands, though he has no other, the principal, being only a creditor, would have to come in and share with other creditors in the very money which was collected for him. On the other hand, though the attorney should use all care and diligence in keeping the money, if it should be lost or destroyed without his fault, being only a debtor to his principal, the loss would be his, and he would still owe the debt. But neither of these things is so. In the one case, on the death of the agent, the money, being identified, would belong to the principal; in the other, the agent having used due diligence in keeping his principal's property, the loss would fall on the principal and not on him. We can see no reason, then, so long as the identity of the money and its conversion are clearly established, why it should be governed by any other rule than the conversion of any other property.

But a difficulty in applying this rule may arise from the facility with which money is mingled with other money, and the habit which undoubtedly prevails quite extensively among those who collect money for others, of mingling it with their own so that it can no longer be identified. It is admitted that where this is done, it can no longer be followed and specifically recovered. And it may, perhaps, well be said that where, by the course of dealing between the parties, the agent has been accustomed to treat the money collected as his own, and to consider himself the absolute debtor of the principal for the amount, which practice has been recognized by the principal, an authority for that purpose might be fairly implied, which would protect the agent from liability for converting the money of his principal to his

own use. Undoubtedly such an authority might frequently be inferred from the course of dealing. But in the absence of any such, I am unable to discover any reasoning which should shield an agent from liability in trover for converting the money of his principal to his own use. For if right in saying that when the money he has received is in a distinct parcel, and is demanded by the owner, and he refuses to deliver, he would be liable in trover, could he, by mingling the money with his own, without any authority, and then refusing to pay it over, place himself in any better position? It would seem difficult to support such a proposition by any satisfactory reasoning. In cases where the agent so mingles the money of his principal with his own, yet on demand pays the amount due to his principal, the question whether he had technically converted any part of the identical money he had received, would be of no practical importance, inasmuch as the principal would get the amount belonging to him. But when he so mingles them without authority and then refuses to pay, I am unable to see why such refusal should not be just as much evidence of a conversion as though the money were still in a separate parcel. The only difficulty growing out of the nature of money is, as some of the cases have said, a difficulty of fact and not of law. In law, the rights of the parties in respect to the money are the same as in respect to any other property. The only difference is, that the identity of money is more easily destroyed than that of other property, and where the agent has so destroyed it, it can no longer be specifically recovered; not because the right no longer exists, but because of the difficulty in fact. But this difficulty does not exist in respect to the question of the liability of the agent for the conversion. So far as that is concerned, there is no more difficulty in showing its conversion than in showing the conversion of any other property. And that being so, it would follow that the agent should be held liable for converting it, upon the same principle that he would be for converting any other.

In *Stott vs. Alexander*, 2 Sneed, 650, it is assumed that trover may be sustained by an administrator *de bonis non*, for money of the intestate which came into the hands of the

June Term, 1861.

COTTON v. SHARPSTEIN.

executor of the former administrator, though the action failed for want of proof of the identity of the money. In *Ringo vs. Field*, 1 Eng., 43, the defendant, as agent of the plaintiff, had collected a sum of money, which was paid in a box of specie, and was deposited by the agent in a bank, and the certificate taken in his own name. The court say, page 49, " The custody of the box by the agent was the possession of the principal. The defendant was, as such agent, authorized to receive it for the principal and pay it over to him. The depositing of it in the bank, whether as a general or special deposit, and taking the certificate therefor in his own name, were acts from which the jury were authorized to find a conversion. If the deposit was general, it became thereby transferred into a mere debt, the legal title to which was in the defendant, and this would have been of itself a conversion. On the other hand a special deposit of it in the defendant's own name, was at least evidence of a conversion." In the case of *An Attorney*, 30 Eng. L. & E., 390, funds had been sent to an attorney to invest and apply the proceeds in carrying on a divorce suit. He deposited them in his own name, and used the money. Lord CAMPBELL said: " Those bills were chattels sent to him to be applied to a specific purpose for the benefit of the client, and he could not honestly mix the proceeds of those bills with his own proper money." And again: " Unless there was some evidence of condonation on the part of the client, we cannot treat this as a case of mere debt."

We have found no case where the exact question now under discussion has been decided. But we are satisfied that it is the clear result of principles well established, that it is the duty of an agent to keep money collected by him, for the principal to whom it belongs, and that if, in the absence of any authority, express or implied, to treat it as his own, and himself as a mere debtor, he wrongfully converts it to his own use, he is liable to an action of trover, and to all the legal consequences of such an action.

It was said in the opinion of the court below, that in the constitutions of other states, in the clause prohibiting imprisonment for debt, an exception was inserted excluding

persons acting in a fiduciary capacity ; and it was claimed that as no such exception is contained in our constitution, no such exception could be made in fact.    This argument is undoubtedly correct as to all debts of persons acting in a fiduciary capacity, which are founded upon contract.    But it does not follow that the want of such an exception would prevent persons acting in a fiduciary capacity from arrest and imprisonment for a tortious conversion of property, even though such tort might also be a violation of their trusts. For, as has already been attempted to be shown, such an action is not for a " debt arising upon contract " at all, but is for damages for a tort.

It may be that some persons acting in a fiduciary capacity, such as executors, administrators and trustees of express trusts, might not be liable in an action of trover for a conversion, for the reason that the legal title to the property was in them.    The exception referred to may have been introduced in other constitutions for the purpose of reaching such cases. But we think no such exception is necessary in any case where the party is liable to an action of trover, one of the established incidents of which is an execution against the body.

And there is nothing in the *Case of Blair*, 4 Wis., 522, in conflict with this conclusion.    There the party was liable only on a judgment which had been recovered in another state, which was clearly a debt arising on a contract, and within the prohibition of our constitution.

The order appealed from must be reversed, with costs.