# CASES DETERMINED

---

## SUTTON VS. THE TOWN OF WAUWATOSA.

CONTRIBUTORY NEGLIGENCE. *Violation of Sunday law no defense to an action for injuries received on that day in consequence of defendant's negligence. Nonsuit.*

1. The fact that plaintiff, at the time he suffered injuries to his person or property from the negligence of defendant, was doing some unlawful act, will not prevent a recovery, unless the act was of such a character as would naturally tend to produce the injury.
2. Thus, the fact that plaintiff was driving his cattle to market on Sunday, in violation of the statute, when they were injured by the breaking down of a defective bridge which the defendant town was bound to maintain, would not prevent a recovery upon due proof of defendant's negligence in constructing and maintaining such bridge.
3. The question whether plaintiff was guilty of contributory negligence, in driving so large a number of cattle as he did upon the bridge at one time, should be left to the jury, unless the evidence is decisive not only as to the number of cattle so driven upon the bridge, but also as to the weight which bridges on highways, like the one in question, should be constructed to sustain.
4. A plaintiff should not be nonsuited unless it appears that the evidence in his behalf, upon the most favorable construction that the jury would be at liberty to give it, would not warrant a verdict for him.

APPEAL from County Court for *Milwaukee* County.

Action against a town to recover damages for injuries to plaintiff's cattle, caused by the breaking down of a defective bridge which they were crossing.

Sutton vs. The Town of Wauwatosa.

The plaintiff started from Columbus on a Friday morning with a drove of about fifty cattle, intending to take them to Milwaukee, and sell them. Stopping at Hartland over Saturday night, he resumed his journey on Sunday morning, and at about four o'clock, P. M., reached a public bridge of about seventy-two feet span, over the Menomonee river, in the town of Wauwatosa. The cattle were driven upon the bridge, and when the greater part of them were near the middle of the span the stringers broke, some twelve feet from the abutments at each end, and precipitated the structure, with the cattle upon it,into the river, causing the death of some, severely injuring others and rendering the remainder, for a time, unsalable.

The complaint alleges, that the injury was caused by the dangerous, unsafe and rotten condition of the bridge, and the neglect of the defendant to keep it in proper repair.

The answer denies the negligence charged to the defendant, and alleges that the cattle were driven upon the bridge in so careless and negligent a manner as to cause it to break; and, also, that they were so driven upon the bridge on Sunday.

After hearing the evidence on the part of the plaintiff, the court granted a nonsuit, on the ground that the plaintiff, being in the act of violating the statute, prohibiting the doing of secular business on Sunday, when the injury occurred, could not recover therefor. The plaintiff appealed.

*Jenkins & Elliott*, for appellant, as to the liability of the town, cited *Ward v. Jefferson*, 24 Wis., 342. To the point that the plaintiff's violation of the Sunday law, did not bar his recovery in the action they cited. *Bryant v. Biddeford*, 39 Me., 193; *Morton v. Gloster*, 46 id., 520; *Binge v. Gardiner*, 19 Conn., 507; *Phalen v. Clark*, id., 421; *Adams v. Gay*, 19 Vt., 358; *Sargeant v. Butts*, 21 id., 99; *Banks v. Werts*, 13 Ind., 205; *Harrison v. Marshall*, 4 E. D. Smith, 271; *Nodine v. Doherty*, 46 Barb., 59; *Davies v. Mann*, 10 Mees. & Wels., 546; *Daley v. N. & W. R. R. Co.*, 26 Conn., 591; *Kidder v. Dunstable*, 11 Gray, 342; *Brown v. Lynn*, 31 Pa. St., 510; *Powhattan, etc., Co., v. Appo-*

Sutton vs. The Town of Wauwatosa.

*mattox R. R. Co.*, 24 How. (U. S.), 247; *Flagg v. Millbury*, 4 Cush., 243, and other cases which are also cited in the opinion. To the point that the plaintiff, if not wholly free from fault, was so much less culpable than the defendant as to incline the balance in his favor, they cited *Peoria Bridge Association v. Loomis*, 20 Ill., 235; *Galena Railroad v. Jacobs*, id., 478; *Walker v. Westfield*, 39 Vt., 246; *Humphreys v. Armstrong Co.*, 56 Pa. St., 204; *Colegrove v. N. York & Harlem R. R. Co.*, 6 Duer, 382; *Haley v. Earle*, 30 N. Y., 208; *Dreher v. Fitchburg*, 22 Wis., 675.

*C. K. Martin & Palmer, Hooker and Pitkin*, for respondent, as to the town's liability for negligence, cited *City of Providence v. Clapp*, 17 How., 161; *Gregory v. Adams*, 14 Gray, 242; *Fitz v. Boston*, 4 Cush., 365; Shearman & Redfield on Negligence, secs. 369–382, and cases cited; and as to contributory negligence, *Achtenhagen v. Watertown*, 18 Wis., 331; *Hunter v. Mil. & Chi. R. R. Co.*, 11 Wis., 160; Shearman & Redfield, Negligence, sec. 412.

As to plaintiff's violation of sec. 5, ch. 183, R. S., and its effect upon his right to recover, they cited *Ætna Ins. Co. v. Harvey*, 11 Wis., 394; *Bosworth v. Swansey*, 10 Met., 363; *Lyon v. Strong*, 6 Vt., 219; *Commonwealth v. Knox*, 6 Mass., 76; *Jones v. Andover*, 10 Allen, 18; *Johnston v. The Commonwealth*, 22 Pa. St., 102; *Bryant v. Biddeford*, 39 Me., 193.

DIXON, C. J. It is very clear that the plaintiff, in driving his cattle along the road and over the bridge, to a market, on Sunday, was at the time of the accident in the act of violating the provisions of the statute of this state, which prohibits, under a penalty not exceeding two dollars for each offense, the doing of any manner of labor, business or work on that day, except only works of necessity or charity, R. S., c. 183, § 5. It was upon this ground the non-suit was directed by the court below, and the point thus presented, that the unlawful act of the plaintiff was negligence, or a fault on his part contributing to

the injury, and which will preclude a recovery against the town, is not a new one; nor is the law, as the court below held it to be, without some adjudications directly in its favor, and those by a judicial tribunal as eminent and much respected for its learning and ability as any in this country. *Bosworth v. Swansey*, 10 Met., 363, *Jones v. Andover*, 10 Allen, 18. A similar, if not the very same principle has been maintained in other decisions of the same tribunal. *Gregg v. Wyman*, 4 Cush., 322, *May v. Foster*, 1 Allen, 408. But in others still, as we shall hereafter have occasion to observe, the same learned court has, as it appears to us, held to a different and contradictory rule in a class of cases which it would seem ought obviously to be governed by the same principle. The two first above cases were in all material respects like the present, and it was held there could be no recovery against the towns. In the first, the opinion, delivered by Chief Justice Shaw, and which is very short, commences with a statement of the proposition, repeatedly decided by that court, "that to maintain the action it must appear that the accident was occasioned exclusively by the defect of the highway; to establish which, it must appear that the plaintiff himself is free from all just imputation of negligence or fault." The authorities to this proposition are cited, and the statute against the pursuit of secular business and travel on the Lord's day then referred to, and the opinion proceeds: "The act of the plaintiff, therefore, in doing which the accident occurred, was plainly unlawful, unless he could bring himself within the excepted cases; and this would be a species of fault on his part, which would bring him within the principle of the cases cited. It would show that his own unlawful act concurred in causing the damage complained of." This is all of the opinion touching the point under consideration.

In the next case there was a little, and but a little, more effort at reasoning upon the point. The illustrations on page 20, of negligence in a railway company in omitting to ring the bell of the engine, or to sound the whistle at the crossing of a

highway, and of the traveller on the wrong side of the road with his vehicle at the time of the collision, and the language of the court alluding to such " conduct of the party as contributing to the accident or injury which forms the ground-work of the action," very clearly indicate the true ground upon which the doctrine of contributory negligence, or want of due care in the plaintiff, rests, but it is not shown how or why the mere violation of a statute by the plaintiff constitutes such ground. Upon this point the court only say : " It is true that no direct unlawful act of omission or commission by the plaintiff, done at the moment when the accident occurred, *and tending immediately to produce it*, is offered to be shown in evidence. But it is also true that, if the plaintiff had not been engaged in the doing of an unlawful act, the accident would not have happened, and the negligence of the defendants in omitting to keep the road in proper repair would not have contributed to produce an injury to the plaintiff. It is the disregard of the requirements of the statute by the plaintiff, which constitutes the fault or want of due care, which is fatal to the action." It would seem from this language that the violation of the statute by the plaintiff is regarded only as a species of remote negligence, or want of proper care on his part, contributing to the injury.

The two other cases above cited were actions of tort by the owners, to recover damages from the bailees for injuries to personal property loaned and used on Sunday—horses loaned and immoderately driven on that day. They were decided against the plaintiffs, and chiefly on the ground of the unlawfulness of the act of loaning or letting on Sunday of the horses, to be driven on that day in violation of the statute, which the plaintiffs themselves were obliged to show, and the doctrine of *par delictum* was applied. It was in substance held in each case that the plaintiff, by the first wrong committed by him, had placed himself *in pari delicto* with the defendant, with respect to the subsequent and distinct wrong committed by the latter,

and the actions were dismissed upon the principle that the law will not permit a party to prove his own illegal acts in order to establish his case.

In direct opposition to the above decisions are the numerous cases decided by the courts of other states, the supreme court of the United States, and the courts of Great Britain, which have been so diligently collected and ably and forcibly presented in the brief of the learned counsel for the present plaintiff. Of the cases thus cited, with some others, we make particular note of the following : Woodman v. Hubbard, 5 Foster, 67 ; Mohney v. Cook, 26 Penn., 342 ; Norris v. Litchfield, 35 N. H., 271 ; Corey v. Bath, ib., 530 ; Merritt v. Earle, 29 N.Y., 115; Bigelow v. Reed, 51 Maine, 325 ; Hamilton v. Goding, 55 id., 428 ; Baker v. The City of Portland, 58 ib., —; Kerwhacker v. Railway Co., 3 Ohio St., 172 ; Phila., etc., Railway Co. v. Phila., etc., Tow Boat Co., 23 How., (U. S.) 209 ; Bird v. Holbrook, 4 Bing., 628 ; Barnes v. Ward, 9 M. G. & S., 420.

It seems quite unnecessary, if indeed it were possible, to add any thing to the force or conclusiveness of the reasons assigned in some of these cases in support of the views taken and decisions made by the courts. The cases may be summed up and the result stated generally to be the affirmance of two very just and plain principles of law as applicable to civil actions of this nature, namely : first, that one party to the action, when called upon to answer for the consequences of his own wrongful act done to the other, cannot allege or reply the separate or distinct wrongful act of the other, done not to himself nor to his injury, and not necessarily connected with, or leading to, or causing or producing the wrongful act complained of ; and, secondly, that the fault, want of due care or negligence on the part of the plaintiff, which will preclude a recovery for the injury complained of, as contributing to it, must be some act or conduct of the plaintiff having the relation to that injury of a cause to the effect produced by it. Under the operation of the first principle, the defendant cannot exonerate himself or claim

immunity from the consequences of his own tortious act, voluntarily or negligently done to the injury of the plaintiff, on the ground that the plaintiff has been guilty of some other and independent wrong or violation of law. Wrongs or offenses cannot be set off against each other in this way. But we should work a confusion of relations, and lend a very doubtful assistance to morality," say the court in *Mohney v. Cook*, "if we should allow one offender against the law to the injury of another, to set off against the plaintiff that he too is a public offender." Himself guilty of a wrong, not dependent on nor caused by that charged against the plaintiff, but arising from his own voluntary act or his neglect, the defendant cannot assume the championship of public rights, nor to prosecute the plaintiff as an offender against the laws of the state, and thus to impose upon him a penalty many times greater than what those laws prescribe. Neither justice nor sound morals require this, and it seems contrary to the dictates of both that such a defense should be allowed to prevail. It would extend the maxim, *ex turpe causa non oritur actio*, beyond the scope of its legitimate application, and violate the maxim equally binding and wholesome, and more extensive in its operation, that no man shall be permitted to take advantage of his own wrong. — To take advantage of his own wrong, and to visit unmerited and over rigorous punishment upon the plaintiff, constitute the sole motive for such defense on the part of the person making it. In the cases of the horses let to be driven on Sunday, so far as the owners were obliged to resort to an action on the contract which was executory and illegal, of course there could be no recovery; but to an action of tort, founded not on the contract, but on the tort or wrong subsequently committed by the defendant, the illegality of the contract furnished no defense, as is clearly demonstrated in *Woodman v. Hubbard*, and the cases there cited. The decisions under the provision of the constitution of this state abolishing imprisonment for debt arising out of or founded on a contract express or implied, and some others

in this court, strongly illustrate the same distinction. *In re Mowry*, 12 Wis., 52, 56, 57; *Cotton v. Sharpstein*, 14 Wis., 229, 230; *Schennert v. Kœhler*, 23, Wis., 523, 527.

And as to the other principle that the act or conduct of the plaintiff, which can be imputed to him as a fault, want of due care or negligence on his part contributing to the injury, must have some connection with the injury as cause to effect, this also seems almost too clear to require thought or elaboration. To make good the defense on this ground, it must appear that a relation existed between the act or violation of law on the part of the plaintiff, and the injury or accident of which he complains, and that relation must have been such as to have caused or helped to cause the injury or accident, not in a remote or speculative sense, but in the natural and ordinary course of events as one event is known to precede or follow another. It must have been some act, omission or fault naturally and ordinarily calculated to produce the injury, or from which the injury or accident might naturally and reasonably have been anticipated under the circumstances. It is obvious that a violation of the Sunday law is not of itself an act, omission or fault of this kind, with reference to a defect in the highway or in a bridge over which a traveler may be passing, unlawfully though it may be. The fact that the traveler may be violating this law of the state, has no natural or necessary tendency to cause the injury which may happen to him from the defect. All other conditions and circumstances remaining the same, the same accident or injury would have happened on any other day as well. The same natural causes would have produced the same result on any other day, and the time of the accident or injury, as that it was on Sunday, is wholly immaterial so far as the cause of it or the question of contributory negligence is concerned. In this respect it would be wholly immaterial also that the traveler was within the exceptions of the statute, and traveling on an errand of necessity or charity, and so was lawfully upon the highway.

The mere matter of time, when an injury like this takes place, is not in general an element which does or can enter at all into the consideration of the cause of it. Time and place are circumstances necessary in order that any event may happen or transpire, but they are not ordinarily, if they ever are, circumstances of cause in transactions of this nature. There may be concurrence or connection of time and place between two or three or more events, and yet one event not have the remotest influence in causing or producing either of the others. A traveler on the highway, contrary to the provisions of the statute, yet peaceably and quietly pursuing his course, might be assaulted and robbed by a highwayman. It would be difficult in such case to perceive how the highwayman could connect the unlawful act of the traveler with his assault and robbery so as to justify or excuse them, or how it could be said, that the former had any natural or legitimate tendency to cause or produce the latter. It is true, it might be said, if the traveler had not been present at that particular time or place, he would not have been assaulted and robbed, but that too might be said of any other assault or robbery committed upon him; for if his presence at one time and place be a fault or wrong on his part, contributing to the assault and robbery in the nature of cause to effect, it must be equally so at every other time and place, and so always a defense in the mouth of the highwayman. Every highwayman must have his opportunity by the passing of some traveler, and so, some one must pass over a rotten and unsafe bridge or defective highway before any accident or injury can happen from that cause. Connection, therefore, merely in point of time, between the unlawful act or fault of the plaintiff, and the wrong or omission of the defendant, the same being in other respects disconnected, and independent acts or events, does not suffice to establish contributory negligence or to defeat the plaintiff's action on that ground. As observed in *Mohney v. Cook*, such connection, if looked upon as in any sense a cause, whether sacred and mysterious or other-

wise, clearly falls under the rule *causa proxima non remota spectatur.*

" The cause of an event," says APPLETON, C. J., in *Moulton v. Sanford,* 51 Maine, 134, " is the sum total of the contingencies of every description, which, being realized, the event invariably follows. It is rare, if ever, that the invariable sequence of events subsists between one antecedent and one consequent. Ordinarily that condition is usually termed *the cause,* whose share in the matter is *the most conspicuous and is the most immediately preceding and proximate to the event.*"

In the present case the weight of the same cattle, upon the same bridge, either the day before or the day after the event complained of, when the plaintiff would have been guilty of no violation of law in driving them, would most unquestionably have produced the same injurious result. And if, on that day even, the driving had been a work of necessity or charity, as if the city of Milwaukee had been in great part destroyed by fire, as Chicago recently was, and great numbers of her inhabitants in a condition of helplessness and starvation, and the plaintiff hurrying up his drove of beef cattle for their relief, no one doubts the same accident would then have happened, and the same injuries have ensued. The law of gravitation would not then have been suspended, nor would the rotten and defective stringers have refused to give way under the superincumbent weight, precisely as they did do on the present occasion. There are many other violations of law, which the traveller or other person passing along the highway may, at the time he receives an injury from a defect in it, be in the act of committing, and which are quite as closely connected with the injury, or the cause of it, as is the violation of which complaint is made against the present plaintiff. He may be engaged in cruelly beating or torturing his horse, or ox, or other animal; he may be in the pursuit of game, with intent to kill or destroy it, at a season of the year when this is prohibited; he may be exposing game for sale, or have it in his possession, when these are

unlawful; he may be in the act of committing an assault, or resisting an officer; he may be fraudulently passing a toll gate, without paying his toll; and he may be unlawfully setting or using a net or seine, for the purpose of catching fish, in an inland lake or stream.

All of these are acts prohibited by the same chapter or statute in which we find the prohibition from work and labor on Sunday, and some of them under the same, but most under a greater penalty than is prescribed for that offense, thus showing the character or degree of culpability which was variously attached to them in the opinion of the legislature. And there are many other minor offenses, *mala prohibita* merely, created by statute, which might be in like manner committed. There are in Massachusetts, and doubtless in many of the states, statutes against blasphemy and profane cursing and swearing, the prevention of which seems to be equally if not more an object of solicitude and care on the part of the legislature, than the prevention of labor, travel or other secular pursuits on Sunday, because more severely punished. It has not yet transpired we believe, even in Massachusetts, that the action of any person to recover damages for an injury sustained by reason of defects in a highway, has been peremptorily dismissed because he was engaged at the time in profane cursing or swearing, or because he was in a state of voluntary intoxication, likewise prohibited under penalty by statute.

It is obvious that the breaking down of a bridge from the rottenness of the timbers, or their inability to sustain the weight of the person or of his horses and carriage, could not be affected by either of these circumstances, and yet, on the principle of the decisions above referred to in that state, it is not easy to see why the action must not be dismissed. On principle there could be no discrimination between the cases, and it could make no difference in what the unlawful act of the plaintiff consisted at the time of receiving the injury. We must reject the doctrine of those cases entirely and adopt that

of the other cases cited, and which is well expressed by the supreme court of Maine, in *Baker v. Portland*, 59 Maine, 199, 204, as follows: " The defendant's counsel contends that the simple fact that the plaintiff is in the act of violating the law, at the time of the injury, is a bar to the right of recovery. Undoubtedly there are many cases where the contemporaneous violation of the law by the plaintiff is so connected with his claim for damages as to preclude his recovery; but to lay down such a rule as the counsel claims, and disregard the distinction in the ruling of which he complains, would be pro-. ductive oftentimes of palpable injustice. The fact that a party plaintiff in an action of this description was at the time of the injury passing another wayfarer on the wrong side of the street, or without giving him half the road, or that he was traveling on runners without bells, in contravention of the statute, or that he was smoking a cigar in the street, in violation of municipal ordinance, while it might subject the offender to a penalty, will not excuse the town for a neglect to make its ways safe and convenient for travelers, if the commission of the plaintiff's offense did not in any degree contribute to produce the injury of which he complains."

Strong analogy is afforded and much weight and force of reason bearing upon this question are found in some of the cases which have arisen upon life policies, and as to the meaning and effect to be given to the condition usually contained in them, exempting the company from liability in case the assured " shall die in the known violation of any law," etc., and it has been held that the violation must be such as is calculated to endanger life, by leading to acts of violence against, or to the bodily or personal injury or exposure of, the assured, and so to operate in producing his death in the connection of cause to effect. See opinions in *Bradley v. Mutual Benefit Life Ins. Co.*, 44 N. Y.

In the case of *Clemens v. Clemens*, recently decided by this court, it became necessary to consider the same question, though

Sutton vs. The Town of Wauwatosa.

under different circumstances, as to what violation of law on the part of the plaintiff would bar his action in a court of justice and leave him remediless in the hands of an over-reaching and dishonest antagonist, and the views there expressed are not without their relevancy and adaptation to the question as here presented. In that case, this court adopted the rule of law as settled in Massachusetts, favoring the remedy of the plaintiff, against the opposite rule sustained by the adjudications in some of the other states, and consistency of decision seems now clearly to require that our action should be reserved with respect to the rule established by the cases here referred to. The inconsistency upon general principle between these decisions of the same learned court and those there relied upon and adopted, will, we think, be readily perceived and conceded when carefully examined and considered in connection with each other.

The other question presented on the motion for a nonsuit, and which the court below did not decide, but which has been argued here, is one of more doubt and difficulty to our minds. It is, whether the plaintiff was guilty of contributory negligence in permitting so many cattle to go upon the bridge at one time. To sustain the non-suit on this ground, it is necessary for us to look at the facts in the most favorable light possible for the plaintiff, in which the jury would have been at liberty to find them, and then to say that there was no evidence which would have justified a verdict in his favor, or such a clear and decided preponderance of evidence against him as would have required the court to set aside a verdict finding to the contrary. This court is not sufficiently familiar with the modes of constructing and using bridges upon country highways, the degree of strength required to render them ordinarily and reasonably safe and passable, the weight which they are expected or required to sustain, the care necessary in passing over them, and especially with herds of cattle or other animals, to say, with confidence in the correctness of its own judgment, upon the evidence before it, that the plaintiff was guilty of such negligence.

The evidence given throws little or no light upon these points, necessary to the formation of a correct judgment, and they are matters upon the evidence, when in, more properly to be considered by the jury, unless the evidence should be such, within the rule above stated, as to make it the duty of the court to withdraw them from the consideration of the jury, and itself to determine the legal rights of the parties upon the truth of the facts thus assumed to be indisputably shown.

*By the Court.* Judgment reversed, and a *venire de novo* awarded.