GROVE (CAVENDER v.). See Case No. 2,530.

GROVE (RANSDALE v.). See Case No. 11,570.

GROVER v. CLINTON. See Case No. 5,845.

## Case No. 5,845.

GROVER & BAKER SEWING MACH. CO. v. CLINTON et al.

[5 Biss. 324; 8 N. B. R. 312; 6 Chi. Leg. News, 33; 18 Int. Rev. Rec. 166; 21 Pittsb. Leg. J. 34.][1]

Circuit Court, W. D. Wisconsin. June, 1873.

FIDUCIARY DEBT—COLLECTION BY AGENT—ACT OF 1841—MINGLING FUNDS—CONVERSION.

1. Money collected by an agent under an agreement to account and pay over the proceeds monthly to his principal, is not a debt created in a "fiduciary character" within the meaning of the bankrupt act.
[Cited in Keime v. Graff. Case No. 7,650; Zeperink v. Card, 11 Fed. 296.]
[Cited in Woodward v. Towne, 127 Mass. 42; Gibson v. Gorman, 44 N. J. Law, 328.]

2. A bankrupt is not liable to arrest on such a debt, and it is discharged in bankruptcy.
[Cited in Re Smith, Case No. 12,976.]

3. The words "fiduciary character," in the act of 1867 [14 Stat. 517], are essentially the same as "any other fiduciary character," in the act of 1841.
[Cited in Hennequin v. Clews, 77 N. Y. 431.]

4. Decisions under the bankrupt act of 1841 [5 Stat. 440], considered and approved. In re Kimball [Case No. 7,768], disapproved.

5. It seems, that when an agent is to account monthly with his principal, a court might infer that the agent was allowed to mingle the money collected with his other funds, and to consider himself an absolute debtor for that amount, and if authority so to do may be implied from the course of dealing. the agent would be exempted from special liability for a conversion of the money.

This was an action of assumpsit, by the Grover & Baker Sewing Machine Company. against A. T. Clinton, R. C. Douglass and E. D. Loomis, their agents in La Crosse, to recover a balance of one thousand six hundred and thirty dollars and seventy-one cents. Since the 1st of April, 1872, defendants, who were merchants at La Crosse, had been the plaintiff's agents in the sale of sewing machines, receiving a commission of thirty-five per cent. of the retail price, and accounting and paying over the balance of sales monthly. The defendants, prior to the commencement of this suit, had been adjudicated bankrupts in the district court; but the plaintiffs, assuming that they were liable to arrest under the state statute, procured an

[1] [Reported by Josiah H. Bissell. Esq., and here reprinted by permission. 18 Int. Rev. Rec. 166, contains only a partial report.]

order for their arrest from the circuit court in this cause, in accordance with the state practice, by virtue of which they were arrested and held to bail. This was a motion by the defendants to be discharged from arrest on the ground that, under the bankrupt act, they were exempt from arrest under the cause of action set forth in the complaint.

Carpenter & Murphey, for plaintiff, cited In re Seymour [Case No. 12,684]; In re Kimball [Id. 7,768]; same case on review [Id. 7,769]. The transaction is, under the statute of Wisconsin, a crime for which the defendants are liable to indictment as for larceny. Rev. St. (Taylor's Ed.) c. 165, § 30. And it cannot be said that a transaction, thus declared to be crime, is a mere matter of contract between the parties.

S. U. Pinney, Wing & Prentiss, and Cameron & Losey, for defendants.

Before DAVIS, Circuit Justice, and HOPKINS, District Judge.

HOPKINS, District Judge. It seemed to be taken for granted, on the argument, that the state statute authorized an arrest upon such a state of facts. Taylor's St. p. 1452. That question may not be quite as clear as claimed. The state statute, however, is very much broader than the bankrupt act, and allows arrests in all actions of tort, and for money received and misapplied by an agent, factor or broker. In assuming the liability of the defendants to arrest under the state laws, it is doubtful whether due importance was given to the fact, which appears undisputed in this case, that the proceeds were only to be paid over monthly. Such a course of dealing might authorize a court to infer that the agent was allowed to mingle the money collected with his other funds, and to consider himself a debtor for the amount; and if an authority to do so might be fairly implied, the agent would not be liable for wrongfully converting the money, within the meaning even of the state statute.

It is, undoubtedly, the duty of an agent to keep the money collected for his principal, to whom it belongs; and, if in the absence of an authority, express or implied, to treat it as his own, and himself as a mere debtor, he wrongfully uses it for his own benefit and in his own business, he is liable to an action of trover and to the legal consequences of such an action. Cotton v. Sharpstein, 14 Wis. 226. Whether the court ought not, in a case like this, to presume a consent or acquiescence of the principal to such use of the funds by the agent, as to exempt him from the more rigorous remedies in actions for torts, we do not decide, but prefer to place our decision upon the ground upon which the case was argued, that is, the right to arrest in such a case under the bankrupt act, during the pendency of the bankrupt proceedings.

The twenty-sixth section of the bankrupt act exempts the bankrupt from arrest, during the pendency of the proceedings, upon all debts or claims from which his discharge would release him. Section 33 declares "that no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged."

The question depends upon the meaning of the phrase "fiduciary character." It does not mean, certainly, demands arising out of torts, such as trespass or trover, for section 19 allows demands "for goods or chattels wrongfully taken, converted or withheld," to be proven, and such demands are released by the discharge, so that something more and different was meant than a debt or demand originating in a tort. A demand for a wrongful conversion of money ought not, it would seem, upon principle, to render a party liable to arrest any more than a wrongful conversion of goods and chattels.

But it is unnecessary to consider the question abstractly, for the same phrase substantially was used in the act of 1841, and the supreme court of the United States in Chapman v. Forsyth, 2 How. [43 U. S.] 202, construed it as not including cases of this character, but as having reference to special or technical trusts, as distinguished from such as the law implies from the contract of the parties. And the court there very properly observe that if construed to include cases of implied trust, but few debts would remain upon which the bankrupt act would operate.

In concluding the opinion, they say that "a factor who owes his principal money, received on the sale of his goods, is not a fiduciary debtor within the meaning of the act." And if a "factor" is not a "fiduciary debtor," he cannot be said to have acted in a "fiduciary character" in relation to the matter out of which the debt arose; and if that is true of factors, it must be equally so of other agents clothed with similar powers; they cannot be regarded either as fiduciary debtors, or held liable in that character, or be denied the benefit of the discharge under the act. These defendants were, by the express terms of their agreement and their course of dealing, authorized to carry the money received into account, and were to report sales and pay over balance only monthly.

It is true, in the case above cited, some stress is laid upon the association of the words with an enumeration of certain well-defined trusts, as having some bearing upon the interpretation; but such association does not seem to have been regarded as controlling. Is there any substantial difference between the act of 1841 and the present act? We think not. In our opinion the phrase "or any other fiduciary capacity," in that act, is as comprehensive as the words "or while acting in any fiduciary character," used in the act of 1867. We are unable to discover any material difference between them. The omission of the words, "executor, administrator, guardian or trustee," does not necessarily change the

meaning of the phrase "fiduciary character" or capacity. And as that language had been construed by the supreme court as not to include cases of this kind, when the present act was passed we think congress must be presumed to have accepted that construction and to have used the phrase in the sense given to it by the decision of the court above-mentioned. Such is the universal rule for interpreting re-enacted statutes.

The supreme court of Massachusetts, in Cronan v. Cotting, 104 Mass. 245, in a well-considered opinion, have held that the act of 1867 meant the same, and should receive the same construction as that given to the act of 1841, in Chapman v. Forsyth, supra, that the slight change in the phraseology did not warrant a different construction. To give to the act the comprehensive meaning contended for by the plaintiff's counsel, would be to except from its operation a very large and important branch of commercial transactions, and give to manufacturers and others who adopt the mode of selling their manufactured articles through agents, as was done in this case, and to the owners of property (almost necessarily) consigned to commission men and factors for sale, a very great and decided advantage over merchants and others engaged in the ordinary modes of conducting commercial pursuits, and open the door for all kinds of shifts and devices, on the part of merchants as well as manufacturers, to evade the operation of the bankrupt law, alike discreditable to the parties, and detrimental to the interests of trade and commerce.

We are aware that the district court of the Southern district of New York, in Re Kimball [Case No. 7,768], has given a different construction to the section of the bankrupt act now under consideration, and held that a commission merchant, who received property from a country dealer to sell and remit the proceeds, after deducting his commission for selling, was liable to arrest in an action for not paying the proceeds, and that such decision was affirmed by the circuit court in Re Kimball [Id. 7,769], Justice Nelson giving the opinion.

But the reasons assigned by those learned judges fail to satisfy us of the correctness of their conclusions. We cannot see the difference between the present act and the act of 1841, which they refer to, and upon which they base their opinions and reject the decision of Chapman v. Forsyth, above-mentioned. We do not believe that congress intended, by the slight and insignificant change in the phraseology in the present act, to alter the defined meaning and judicial construction given to the act of 1841, and hence regard the decision under that act as binding upon the courts in construing the present act. We think, therefore, and for the reasons above stated, that the defendant's motion should be granted, and direct that they be discharged from arrest, and that the order therefor be vacated and set aside.

For a general discussion of the position of a factor under this 33d section, consult the essay in 7 Am. Law Rev. 32, "Are our factors merchants or trustee?"